CASE No. 841.

BONHAM v. C. C. & A. RAILROAD COMPANY.

A charter of a railroad company prescribed a maximum rate of charge for the transportation of heavy articles by the hundred pounds, and of articles of measurement by the cubic foot, without further definition in the act itself; whether cotton in bales should be charged as a heavy article or as an article of measurement, depends upon the meaning of those terms as used in the charter, to be ascertained by proof of the custom prevailing at the passage of the act.

Before MACKEY, J., Richland, December, 1879.

This case and the next succeeding case, Elder *v.* C. C. & A. R. R. Co., were heard in this court together, both involving a construction of the same section of the act incorporating the defendant company.

M. L. Bonham, railroad commissioner of the State of South Carolina, brought this action against the Charlotte, Columbia and Augusta Railroad Company, to require them to charge for cotton compressed in bales as a heavy article, under the tenth section of their charter, and not as an article of measurement— and to restrain them from charging higher rates of toll than fifty cents per hundred pounds. The defendant claimed that cotton in bales was an article of measurement, within the terms of their charter.

The Circuit decree, after stating the facts and pleadings, held that no judicial comity was violated in hearing this cause, while the same point was pending before the Supreme Court on appeal from a decision by Judge Wallace. The decree then continued as follows:

The matter at issue must be decided as a question of law, de-

pendent upon the true construction of respondent's charter, the meaning and effect of which are to be determined by those established rules for the interpretation of statutes, which are alike commended by reason, and sanctioned by the highest judicial authority. If that construction should operate to affect injuriously either the interests of the corporation or of the public, the remedy is to be sought in the legislative department. Courts are to expound statutes with reference to the legal rights vested under them, and not to frame systems of expediency to fit the varying interests of corporations or individuals.

The question to be decided in this cases arises upon the construction of Section 10 of the act entitled "An act to produce conformity in the charters granted to the Charlotte and South Carolina Railroad Company by the States of North and South Carolina," passed December 19th, 1848. 11 *Stat. L.* 535.

This clause of its charter is construed by the corporation respondent as authorizing it to charge for the transportation of cotton compressed in bales, a rate exceeding fifty cents per hundred pounds for each hundred miles, holding that such cotton as packed in the ordinary hand or horse-power presses of the country, is to be classed as an article of measurement and not as a heavy article, and is therefore subject to a freight charge not exceeding fifteen cents per cubic foot for every hundred miles.

The respondent has therefore charged upon such bales a rate of toll in excess of fifty cents per hundred pounds for each hundred miles, and claim the right, under its charter, to increase its rate upon the same to the limit of fifteen cents per cubic foot for the said distance. The difference in the amount of tolls effected by such classification may be illustrated by the instance of a bale of cotton weighing four hundred and sixty pounds, and containing thirty-five cubic feet.

If charged as a heavy article, to the full limit of the charter rate, the freight thereon would be $2.30 per hundred miles, while charged as an article of measurement, the company may demand the sum of $5.25 for transporting it the same distance. In support of its view the respondent submits that the bale instanced would weigh less by a fraction than fourteen pounds to the cubic foot, and would thus sooner exhaust the cubic capacity

or inner area of the box cars used in transporting this class of freight than articles of less bulk and greater specific gravity or weight.

And hence to classify such bales as heavy articles would be detrimental to the interests of respondent, as the weight capacity of the cars is generally twenty thousand pounds, while twenty-six of such bales would exhaust the cubic capacity of a box car, although aggregating only eleven thousand nine hundred and sixty pounds. The respondent urges, therefore, that the true intent and meaning of its charter are that articles weighing less than thirty pounds to the cubic foot, may be classed as articles of measurement, while articles thirty pounds or more to the cubic foot are to be classed as heavy articles. It is further contended that the practical effect of this formula will be to establish uniformity in freight charges upon all articles, as the maximum charge upon an article by weight at the rate of fifty cents per hundred, would be fifteen cents for thirty pounds, while at fifteen cents per cubic foot, the standard of specific gravity being thirty pounds to the cubic foot, the charge would amount to the same.

It is further submitted that this standard of classification will best give effect to the legislative intent, as expressed in the charter, by harmonizing the rates of toll charged, alike with the weight capacity and the cubic capacity of the cars provided by respondent for the transportation of freights.

I have thus given the salient points in respondent's argument, as unfolding the grounds on which reposes its assumed right to rate cotton in bales as articles of measurement. The theory presented might be deemed tenable if the respondent were a private individual engaged in the carriage of freights, or if the question were, whether the rate charged for the transportation of cotton in bales was a reasonable rate. In the former case, the private carrier could not be subjected to any restrictions save those imposed through considerations of self-interest, induced by the fear of competition or otherwise, while in the latter the basis of classification would be immaterial, as the reasonableness of the charge would alone be in issue.

But the respondent is a railroad corporation in the enjoyment of a highly valuable franchise granted by the state. This fran-

chise embraces not only a right of way over a wide and populous belt of country, extending over not less than one hundred and seventy-five miles of territory in length and one hundred and thirty feet in breadth, wherein it was empowered, for the purpose of its road construction, to divest the ownership of property by a compulsory sale after valuation made, but the free gift of all lands of the state lying within sixty-five feet of said road. (See act to charter the Charlotte and South Carolina Railroad Company, passed December 18th, 1846, Sections 16 and 18.) As a consideration for the valuable privileges with which it has been vested, and the special and exclusive rights conferred upon it, this corporation has contracted to perform certain duties to the public, which are defined in its charter, which, as a safeguard for the public, imposes limits upon its corporate powers to enforce the performance of those duties.

When a corporation, thus richly endowed by the public, is charged by the proper officer of the state with having violated its charter in a matter that deeply concerns the common interests of the people whose beneficiary it is, answers back with the *argumentum ab inconvenienti,* setting up its own convenience as the measure of public right, it can hope to succeed in such an issue only by prevailing upon the courts to ignore both the dictates of right, reason, and the fundamental rules for the interpretation of statutes.

In my opinion, the term "heavy articles," as used in the charter of the Charlotte, Columbia and Augusta Railroad Company, was intended to include cotton compressed in bales by the ordinary presses of the country, of the usual form and weight, as they were known in the commercial world at the date of said charter. My reasons for this conclusion are as follows:

Up to the date of said charter, and for a period of more than thirty years after its enactment, cotton in bales was classed only as an article of weight in fixing the rate of toll to be charged for its transportation. While I recognize the binding force of the rule as severely expounded by Mr. Justice Story that "contemporary construction can never abrogate the text; it can never fritter away its obvious sense; it can never narrow down its true limitations, or enlarge its natural boundaries," (*Story on Const.*

407,) yet, when a term which has no definite legal meaning is used in a statute to embrace a large and indefinable class of articles, which could not, in the nature of things, have been enumerated, we are necessarily remitted to contemporaneous usage, as furnishing a practical construction of the legislative intent. The only just limitation is, that such usage shall not be referred to for the purpose of contradicting or varying the obvious sense of the language of the statute.

The object of construction, as applied to a statute, is to give effect to the intent of the legislature in enacting it. Says Mr. Justice Cooley: " In the case of all written laws, it is the intent of the lawgiver that it is to be enforced." *Cooley on Const. Lim.* 55.

The learned counsel for the respondent, however, while admitting that the statute in question requires construction, and that therefore its import is not obvious, objects to any reference to contemporary usage as a standard of interpretation. This objection is opposed by the overwhelming weight of authority in such cases. *Cohens* v. *Virginia,* 6 *Wheat.* 264 ; *Stuart* v. *Laird,* 1 *Cranch* 299 ; *The King* v. *Osborne,* 4 *East* 335 ; *Cook* v. *Booth, Cowp.* 822 ; 3 *Atk.* 577 ; *Livingston* v. *Tenbroek,* 16 *Johns.* 14 ; *Perrine* v. *Ches. & Del. Canal,* 9 *How.* 172 ; 2 *Phil. on Ev.* 745 ; 2 *Coke Inst.* 282 ; *Bank of England* v. *Anderson,* 3 *Bing. N. C.* 666.

The question now recurs, has there been a long-continued, practical construction of the terms of this charter, by contemporaneous and uniform usage?

I think that this can be established beyond a reasonable doubt, and that the words in question have been interpreted by an unbroken usage extending over a period of more than fifty years.

Twenty years prior to the date of this respondent's charter, the general assembly passed an act incorporating the South Carolina Canal and Railroad Company, (act of December 19th, 1827, 8 *Stat.* 354,) and embodied the following words in Section 4 of the same : " The charge for the transportation of goods, produce, &c., shall not exceed thirty-five cents per hundred pounds on *heavy articles,* and ten cents per cubic foot on *articles of measurement,* for every one hundred miles."

These words are identical with those contained in respondent's charter, except as to the rate of tolls. Yet the South Carolina Railroad Company has invariably, during the long period above stated, and down to the present day, classed cotton in bales as "heavy articles," and charged thereon by weight and not by measurement. At the date of respondent's charter, the South Carolina railroad was in full operation, and had been running its freight and passenger trains for years to Columbia, the capital of the state, where the legislature annually convened. That body was largely composed of cotton planters, and it must be assumed from their direct individual interest in the matter of freight charges on cotton, that when they inserted the words, "heavy articles" and "articles of measurement," in respondent's charter in the year 1846, they were fully aware of the construction that had been given to the same words in the charter of another company granted by them in the year 1827. That construction was, moreover, the one that was most favorable to producers and shippers, and least favorable to the railroad company that adopted and acted upon it.

It is highly reasonable to presume that a legislature so composed, intended that of two freight classifications to which articles of transportation might be subjected, cotton should be placed in the more favored class. This presumption is strengthened when we recur to the fact, that cotton was then, as now, the chief product of the state, and that all industries flourished or languished, and all values rose or fell with its rise or decline in price. It was emphatically the prime source of public and private revenue.

It is also important to consider that it was the product of a non-manufacturing people, and was, therefore, intended for sale in distant markets. Hence it is safe to conclude, that to furnish a cheap and rapid means of transportation to market for this valuable product, must have been the chief motive that impelled popular subscriptions to the capital stock of this company, as provided for in its charter.

But, upon respondent's theory, the legislature intended that the South Carolina Railroad Company should have the right to charge on cotton in bales as articles of measurement, which, at

the rates fixed by its charter, would have enabled that corporation to have charged on a five hundred pound bale of cotton, containing forty cubic feet, the sum of $5 20 from Columbia to Charleston, a distance of one hundred and thirty miles, while the same bale, if transported that distance as a heavy article, at the extreme charter rate, would have been $2.27½ only.

And, on this basis of classification, at the rates of toll allowed in respondent's charter, the charge on a bale of cotton of the above-stated weight and cubic contents, would be from Columbia to Charlotte, one hundred and ten miles, rated as an article of measurement, $6.60, and as an article of weight only $2.75.

The respondent's construction of its charter rights, it will thus be perceived, discriminates severely against cotton, which, it has been shown, might be reasonably presumed to have been the favored product of the state.

But we are not left to presumption in this particular, for we have positive legislation discriminating in favor of this product.

By the act of December 20th, 1828, fixing the rates of toll to be charged on boats passing through the Landsford, Catawba, Saluda, and other canals therein named, it was provided that "for every boat loaded with cotton, one cent on each bale, for each lock. For every boat loaded otherwise than with cotton, thirty-seven and one-half cents for each lock. For every empty boat, twelve and one-half cents. When a boat is loaded with less than thirteen bales of cotton it shall pass as an empty boat. When a boat is loaded with less than one ton, it shall pass as an empty boat." 6 Stat. 370.

The rates of the Columbia canal were established by an act of the same date, as follows: "For every boat loaded with cotton, one cent on each bale; but boats loaded with less than twenty-five bales of cotton shall pay $1. For boats loaded otherwise than with cotton, the following rates are required; from $4 to $2 per boat, according to size. For each empty boat, $1."

It will be observed that, as to the first named canals, a boat loaded with five thousand four hundred pounds of cotton, or twelve bales, estimating a bale at four hundred and fifty pounds was allowed to pass as an empty boat, and was charged only

S

twelve and one-half cents, while a boat with one ton, or two thousand two hundred and forty pounds of any other lading than cotton, was charged thirty-seven and one-half cents per lock.

On the Columbia canal, a boat loaded with twenty-four such bales, or any number less than twenty-five, was charged $1 as an empty boat, while a boat with any other lading, however light, was charged at least $2.

I have thought these details not unnecessary, as they serve not only to exhibit the practical effect of respondent's construction of its charter, but make manifest the fact that at the very period when the words which are now construed to impose on cotton the highest rate of toll, were first embodied in a railroad charter, it was the declared policy of the state to discriminate in favor of that article.

That there may be a state policy not declared in terms, but deducible from the general scope of its legislation, as to a fiscal or industrial enterprise, I have no doubt. *Bank of Augusta* v. *Earle*, 13 *Pet.* 584; *United States* v. *Fisher*, 2 *Cranch* 358; *Charles River Bridge* v. *Warren Bridge*, 11 *Pet.* 544; *Penna. R. R.* v. *Canal Commissioners*, 21 *Penna.* 22; *Potter's Law of Corp.*, vol. *I.*, 32.

It may well be held that this corporation is estopped from denying the correctness of a construction of its charter, which, although most favorable to the public, it has asserted and acted upon for more than a quarter of a century.

Certainly this is the established doctrine applied to railroad corporations, as to the location of their routes, and by parity of reasoning, it should apply to the present case. 1 *Redf. on Rail.* 123.

As to the thirty pounds cubic foot theory, it was, in my opinion, as foreign to the contemplation of the legislators who enacted this charter, as was the mathematical puzzle of the duplication of the cube that baffled the genius of Euclid, or the perplexing problem of the asymptote of the hyperbola. To impute to them any such occult theory, is to take a highly transcendental view of the legislative mind.

Now, is the capacity of respondent's cars to convey articles of measurement at all, more relevant to the issue than would be the tractive power of its engines to carry articles of weight?

The equipment of its road is changeable at the will of the respondent; and for courts to give judicial sanction to such an argument, would be to erect a most variable and uncertain standard by which to measure public rights.

In view of the law and the facts in the premises—

It is ordered, adjudged and decreed, that the rule heretofore granted in the above entitled cause, be, and the same is hereby made absolute, and that the respondent herein, The Charlotte, Columbia and Augusta Railroad Company, the officers, agents, servants and employees, be, and the same are hereby perpetually prohibited and enjoined from charging for the transportation of cotton in bales otherwise than as articles of weight, subject only to the same rates of toll per hundred pounds as are applicable to all other heavy articles, pursuant to the charter of the said company, as herein construed.

It is further ordered, that a copy of this order be forthwith served upon the said respondent, and that the respondent do pay the costs of this proceeding.

From this decree, the defendant appealed, upon the grounds that cotton in bales was an article of measurement within the meaning of its charter; and that there was no evidence to sustain the conclusions of fact as to the custom of charging for cotton on this or other railroads.

*Mr. J. H. Rion,* for appellant.

*Mr. J. T. Rhett,* contra.

March 24th, 1880.   The opinion of the court was delivered by

WILLARD, C. J.   The question on this appeal is one of the construction of the clause of the charter of the defendant corporation, that provides as follows: "That the said company shall have the exclusive right of conveyance or transportation of persons, goods, merchandise and produce over the said railroad to

be by them constructed, and shall have power to charge for such transportation of persons, goods, produce, merchandise and other articles any sum not exceeding the following rates, viz. : On persons, not exceeding six cents per mile for each person, unless the distance which any person may be transported be less than ten miles, in which case the president and directors· may be entitled to make an extra charge of fifty cents for taking up and putting down such person so transported ; for the transportation of goods, produce, merchandise and other articles, not exceeding fifty cents per hundred pounds for each hundred miles on heavy articles, and fifteen cents per cubic foot on articles of measurement for every hundred miles ; and for the transportation of the mails such sums as they may agree for with the agents of the United States."

The question is, whether cotton, packed in bales, in the manner used for the purpose of transportation, may be regarded as an " article of measurement," so as to authorize a charge for the transportation of the same, at the rate of fifteen cents per cubic foot for every hundred miles. The plaintiff charges that cotton, in that condition, is to be regarded as a " heavy article," within the intent and meaning of the statute. The first inquiry is, whether the court can determine, as matter of law, whether cotton in bales is a *heavy article* or an *article of measurement,* in the sense in which these terms are employed in the statute. It is true, as stated by the Circuit judge in his opinion, that the court takes notice of the general customs of the country ; but that does not imply that the usages of business, as a general rule, lay within the judicial notice of the courts. Those customs that have been incorporated as part of the common law, as defined by adjudicated cases, are, beyond question, subjects of judicial notice without proof in point of fact. It is not to be denied that customs may and do become so incorporated, that have had their origin since the period of time to which the common law looks as the test of antiquity. It may well be questioned whether any modern custom becomes incorporated in the common law until it has been established as a matter of fact by judicial authority. The change of the status of such a question from one of fact to one of law, is by gradual and almost insensible steps, but is of

merely speculative interest, as it regards the present case.   It is clear that the terms *heavy articles* and *articles of measurement* cannot be defined, in their application to goods of different kinds, by mere legal authority ; but assuming them to be intelligible to those concerned in the business of transportation by rail, or by more general means, their sense must be made apparent by testimony of such a custom or habit of business as tends to define their import.   If these terms are to be regarded as used in a sense peculiar to those engaged in a particular business, then their force can only be ascertained by testimony adduced for that purpose and as matter of fact.   That they cannot be regarded in any other sense will become apparent from the consideration of their nature.

It is evident that the term *heavy articles* is used in a technical sense, and not according to its popular use, from the fact that it is contrasted with *articles of measurement.*   Articles of measurement are such as are ordinarily transported by measurement and not by weight.   It cannot be said that there is any such class of articles as *articles of measurement* in a general sense, and commonly known and understood as such, and hence the term must have a particular or technical sense.   Without doubt *articles of measurement* are charged according to volume, a cubic capacity, because they are *light,* as compared with the class called *heavy,* and that accounts for the term *heavy* being applied to the opposite class, but that affords the reason of the term, but not its definition.

It is said, however, that the statute affords a means by which the terms *heavy* and *articles of measurement* may be defined without the aid of extrinsic proof, in such manner as to accomplish what should be regarded as the object of the statute, viz., to make every article transported pay according to a single standard by which the two elements of weight and volume are brought to a common unit of comparison.   It is said that an article that weighs thirty pounds and occupies the space of one cubic foot will pay an equal amount, whether it is computed according to weight or to measurement, and that, therefore, an article weighing more than thirty pounds to the cubic foot should be charged as heavy, because it is heavier than the article selected as the unit,

and that articles of less than thirty pounds per cubic foot should, for the same reason, be regarded as *articles of measurement.* This method of gathering the sense of the statute is certainly ingenious, and, if sanctioned by the rules of construction, ought to prevail, notwithstanding its novelty. If the statute indicated an intention to furnish a mathematical formula capable of determining whether any particular article belonged to the one class or to the other, we should be compelled to say that this was the formula, as no other appears, depending wholly on the provisions of the statute, without extrinsic help. But the statute contains nothing that furnishes the indication of such an intent. If we test the mathematical standard by its fitness to accomplish the general objects of the statute, it must fail. Like all theoretical conceptions, it demands a state of things possible but that may never actually exist. For instance, if all articles carried by rail were of the same value, according to weight or volume, the formula would approach perfection. But that is not the case. Coal and diamonds, though intimately related through the element that is common to them, are very far removed from each other in point of value. It is clear that any standard that would rank these articles together as paying the same amount per pound for transportation, would be practically an absurdity. The articles subject to railroad transportation are of so varied a character as to value, liability to produce and receive injury, and convenience of handling and transportation, that the absurdity illustrated by the case of coal and diamonds re-appears with more or less distinctness throughout the whole series.

It may be said that classification of freights into several grades or classes, each paying a rate differing from the others, and passing by the regular steps of gradation from the minimum charge to the maximum, might obviate the irregularity that would result from the differences of value in the articles so graded in the application of the rule of computation already stated. If it were possible that practical classification should be based on differences of value alone, this might be the case. But there are other considerations than that of value that must enter into practical classification, such as liability to produce or sustain damage, and the convenience of handling and transportation. It is apparent

that the moment it is admitted that the amount charged for any two commodities respectively, may be regulated independently of their relative weight and volume, the rule of equality propounded in the mathematical formula is violated, as would be the case, in many instances, where differences relative to liability to produce or receive injury, and the convenience of handling and transporting were allowed to affect the amount of the sums charged for freight. It is clear that the tendency of such a construction as that contended for would be to compel railroad companies to adjust their business to theoretical standards instead of leaving them free, within certain limits, to arrange their modes of transacting their business according to the exigencies of the business. It is equally clear that the whole purpose of the statute was to fix an upward limit to railroad charges, and not to fix a scale by which they might be computed with reference to a unit common to all classes of goods. This would leave the company free to pursue that course that would be dictated by business necessity or prudence within the limits fixed by law. Such being the case, we must conclude that the act does not afford any means of determining the force of the expressions *heavy* and *articles of measurement*, and that these terms must be defined by proof of the custom in practice prevailing at the time of the passage of the act.

There is no evidence in this case in which a construction of these terms can be made in their application to cotton packed in bales, and the judgment appealed from must be set aside and the cause remanded to the Circuit Court for further proceedings.

McIver and McGowan, A. J.'s, concurred.

---

CASE No. 842.

Where a charter of a railroad company prescribed a maximum rate of charge for the transportation of heavy articles by the hundred pounds, and of articles of measurement by the cubic foot, without further defini-